Anna Y. Park, CA SBN 164242
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
Email: lado.legal@eeoc.gov

Elizabeth A. Naccarato, NV BAR #11221
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
333 Las Vegas Boulevard South, Suite 8112
Las Vegas, Nevada 89101
Telephone: (702) 388-5072
Facsimile: (702) 388-5094

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>   vs.<br><br>WEDCO, INC. AND DOES 1-10,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT – TITLE VII**<br>• **CIVIL RIGHTS**<br>**(42 U.S.C. §§ 2000e, et seq.)**<br><br>**JURY TRIAL DEMAND** |

**NATURE OF THE ACTION**

United States Equal Employment Opportunity Commission ("EEOC") brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 against Defendant Wedco, Inc. ("Wedco" or "Defendant") and Does 1-10. EEOC brings this action to correct Wedco's unlawful employment practices, discrimination on the basis of race, and to provide appropriate relief to Larry Mitchell who was adversely affected by Wedco's discriminatory practices. As specified with greater particularity in Paragraph 9 herein, EEOC alleges that Wedco subjected Mr. Mitchell to harassment and disparate treatment based on his race, Black. EEOC further alleges that Wedco constructively discharged Mr. Mitchell from his position as a result of the unlawful harassment and disparate treatment on the basis of his race, Black.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), § 2000e-6 ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Nevada.

**PARTIES**

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and § 2000e-6. At all relevant times, Defendant Wedco continuously had at least (15) employees and has been a corporation doing business in Nevada.

-2-

4. At all relevant times, Defendant Wedco has continuously been an employer engaged in an industry affecting commerce in the State of Nevada within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

5. EEOC is ignorant of the true names and capacities of each Defendant sued as DOES 1 through 10, inclusively, and therefore EEOC sues said defendant(s) by fictitious names. EEOC reserves the right to amend the Complaint to name each DOE defendant individually or collectively as they become known. EEOC alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and EEOC will amend the complaint to allege such responsibility when the same shall have been ascertained by EEOC.

6. All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, including Defendants DOES 1 to 10, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

**CONDITIONS PRECEDENT**

7. More than thirty days prior to the institution of this lawsuit, Mr. Mitchell filed a charge of discrimination with the EEOC alleging that Wedco violated Title VII by discriminating against him based on race.

8. The charge was investigated by the state agency, Nevada Equal Rights Commission ("NERC"). Wedco participated in the NERC investigation by providing a position statement, providing responses to NERC's request for information, facilitating an on-site investigation, and providing subsequent information to support its claims.

9. NERC issued a Letter of Determination finding that Wedco subjected Mr. Mitchell to a racially hostile work environment on the basis of his race, Black, and that the discrimination resulted in Mr. Mitchell's constructive discharge.

10. NERC attempted to conciliate the charge, but conciliation was ultimately unsuccessful. Pursuant to the work-share agreement between the NERC and EEOC, NERC forwarded Mr. Mitchell's charge to EEOC for further processing.

11. Prior to the institution of this lawsuit, EEOC issued a Letter of Determination to Wedco on each of Mr. Mitchell's allegation. In this letter, EEOC found reasonable cause to believe that Wedco subjected Mr. Mitchell to unlawful employment discrimination based upon his race, Black, in the form of harassment and disparate treatment in violation of Title VII. Further, EEOC found reasonable cause that Wedco constructively discharged Mr. Mitchell as a result of the harassment and disparate treatment based on his race, Black, in violation of Title VII.

12. Having so concurred with NERC's findings, EEOC once again attempted to eliminate Wedco's unlawful employment practices and to effect voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. § 2000e-5(b). Over a nearly four-month period, EEOC engaged in good faith attempts to conciliate, including several rounds of both written and telephonic negotiation with a Wedco representative. The parties' conciliation efforts proved unsuccessful. All conditions precedent to the institution of this lawsuit have been met.

## STATEMENT OF CLAIMS

13. Since at least October 2007, Wedco has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2 by subjecting Mr. Mitchell to harassment and disparate treatment on the basis of his race, Black, constituting a racially hostile work environment that ultimately resulted in Mr. Mitchell's constructive

1 discharge.

    a) Wedco subjected Mr. Mitchell to unwelcome and unwanted verbal and visual harassment by co-workers and supervisors.

    b) Mr. Mitchell was employed by Wedco in October 2007, first in the warehouse working on inventory; then as a Driver making deliveries from Wedco's warehouse to its customers. He was appointed permanent driver based on successful performance and remained employed as such until his constructive discharge on July 25, 2008.

    c) The severe harassment Mr. Mitchell experienced began after he became a driver. Specifically, Mr. Mitchell was subjected to derogatory name calling and racial comments and jokes as well as regular use of the word, "nigger." On a daily basis, Mr. Mitchell was exposed to a noose hanging in the receiving area that was visible from his workspace and in a high-traffic area in plain view. Racial comments were made on more than one occasion about the noose as well, and when Mr. Mitchell complained, a supervisor commented, "that nigger only complains." This harassment was objectively and subjectively hostile and was unwelcome by the Mr. Mitchell. Moreover, the harassment altered the conditions of his employment creating a hostile work environment due to his race.

    d) The primary harassers were co-worker Todd Baker, the warehouse Receiving Clerk in whose office the noose was on display, and Jake Wilson, Mr. Mitchell's supervisor. Mr. Wilson gave Mr. Mitchell direction as to his daily assignments and had authority over when Mr. Mitchell could take breaks as described in paragraph 13(e) below. Moreover, Mr. Wilson took over the day-to-day supervisory responsibilities of the Warehouse Manager, Mike Potter, on the occasions Mr. Potter was not available.

1     e)      Warehouse Manager Potter and Wedco Vice President Rich Stotz knew about the noose, knew it had a discriminatory connation, and failed to take action to remove the noose.

f)      In addition, the verbal harassment to which Mr. Mitchell was subjected was both severe and pervasive. The verbal harassment occurred on at least a weekly basis. The harassment was severe enough to alter the conditions of employment and to create an abusive work environment based on frequent use of the word "nigger" and the noose that hung in plain view of all employees. Moreover, Mr. Mitchell was forced to look at the noose every day throughout his tenure at Wedco. Members of Wedco's upper management, including the Warehouse Manager and Vice President, were aware of the noose and its discriminatory connotation and took no action to remove it. On at least one occasion, Mr. Mitchell's supervisor, Mr. Wilson, told Mr. Mitchell that the noose was for him.

g)      Mr. Mitchell, as the only black employee, was treated differently than non-black counterparts. Specifically, Mr. Mitchell was treated differently by his supervisor, Mr. Wilson, who controlled Mr. Mitchell's daily delivery activities. For example, Mr. Wilson did not give Mr. Mitchell breaks when requested, although Mr. Wilson did so for other employees. And Mr. Wilson insisted Mr. Mitchell ask to use the restroom, but did not insist that non-black employees get permission. Additionally, Mr. Wilson intentionally disrupted Mr. Mitchell work equipment and delivery schedule.

h)      Wedco was put on notice of these discriminatory practices through multiple verbal complaints by Mr. Mitchell on a near weekly basis beginning in January 2008 until his constructive discharge in July

2008. Wedco failed to take prompt and effective remedial action to prevent and correct the discriminatory practices as described above. On more than one occasion, when Mr. Mitchell complained, Mr. Wilson commented, "that nigger only complains." Finally, both the Wedco Warehouse Manager and the Vice President were aware of the noose and failed to remove it.

i) The severe and pervasive nature of the harassment and Wedco's failure to take prompt and effective remedial action resulted in the Mr. Mitchell's constructive discharge on or about July 25, 2008.

14. The effect of Wedco's unlawful employment practices complained of as described in paragraph 13 has been to deprive Mr. Mitchell of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, Black.

15. Wedco's unlawful employment practices complained of in Paragraph 13 were done intentionally.

16. Wedco's unlawful employment practices complained of in Paragraph 13 were done with malice and/or reckless indifference to Mr. Mitchell's federally protected rights. As a direct and proximate cause of the Wedco's acts as stated above, Mr. Mitchell has suffered emotional pain, suffering, humiliation, inconvenience, loss of enjoyment of life, and damages, all to be proven at trial.

17. As a direct and proximate cause of the Wedco's acts as stated above, Mr. Mitchell suffered loss of earnings including back pay, front pay and benefits in amounts according to proof.

## PRAYER FOR RELIEF

Based on all the foregoing, EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Wedco, its officers, successors, assigns, and all persons in active concert or participation with Wedco, from engaging in employment

practices which discriminate on the basis of race, Black, that result in a racially hostile work environment.

      B.     Order Wedco to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees, which eradicate the effects of its past unlawful employment practices. Such relief would include changes in Wedco's employment practices to protect other employees from discrimination and retaliation through training, reporting of complaints and recordkeeping.

      C.     Order Wedco to make Mr. Mitchell whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful-place reinstatement or front pay.

      D.     Order Wedco to make whole Mr. Mitchell by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraph 13 above, in amounts to be determined at trial.

      E.     Order Wedco to make whole Mr. Mitchell by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in Paragraphs 13 above, in amounts to be determined at trial.

      F.     Order Wedco to pay Mr. Mitchell punitive damages for their malicious and/or reckless conduct described in Paragraph 13 above, in amounts to be determined at trial.

      G.     Grant such further relief as the Court deems necessary and proper in the public interest.

      H.     Award EEOC its costs of this action.

///
///
///
///
///
///

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 27, 2012                    Respectfully Submitted,

P. DAVID LOPEZ
General Counsel

JAMES LEE,
Deputy General Counsel

GWENDOLYN YOUNG REAMS,
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507


By: _____
           ANNA Y. PARK
Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION