1

2

3

4

5

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

6

7

8

9

10

11

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | 3:12-cv-00523-RCJ-VPC |
| vs. | ) ) | **ORDER** |
| WEDCO, INC., and DOES 1-10, | ) ) ) | |
| Defendants. | ) ) | |

12

13

14

Before the Court is Defendant Wedco, Inc.'s Motion to Seal (ECF No. 91) and its Motion for Spoliation Sanctions (ECF No. 92), as well as Plaintiff's Opposition and Cross Motion for Spoliation Sanctions (ECF No. 94).

15

## I. BACKGROUND

16

17

18

19

20

21

22

23

Larry Mitchell is an African American who worked as a deliveryman for Wedco, Inc. from about October 2007 to July 25, 2008. (Intake Inquiry Form 1, ECF No. 92 Ex. 1). During that time, Mitchell allegedly experienced a work environment that caused him to quit. On August 21, 2008, Mitchell submitted an "Intake Inquiry Form" to the Nevada Equal Rights Commission ("NERC") claiming that he was forced to leave his job due to discrimination. (*Id.* at 2–3). Mitchell alleged that he was denied breaks, required to ask permission to use the bathroom, and intimidated by a hangman's noose that hung in Wedco's warehouse. (*Id.* at 2). Maurice Davis, a NERC Intake Officer, sent a letter to Mitchell on August 22, 2008 scheduling a

24

phone interview to discuss his complaint. (Davis Letter 1, ECF No. 92 Ex. 3).  Davis's usual

practice during these interviews was to take handwritten notes and then transpose those notes

into a draft of the charge, which was then placed into the complaining party's case folder. (Davis

Dep. 21:18–25, 31:19–33:13, 55:20–56:13, ECF No. 92 Ex. 5).  Davis would subsequently shred

his handwritten notes. (*Id.* at 33:4–6).  While Davis could not remember the specifics of

Mitchell's case, he agreed that he likely followed his usual practice at the time he interviewed

Mitchell. (*Id.* at 14:9–15:9, 33:1–13).  Shortly after the intake interview, Mitchell filed a Charge

of Discrimination ("the Charge") with the NERC against Wedco. (Notice of Charge of

Discrimination, ECF No. 92 Ex. 4).  Wedco's Vice President, Richard Stoltz ("Stoltz"), upon

receiving the Charge, immediately removed the noose and threw it in the trash.  (Stoltz Dep.

92:8–21, ECF No. 94 Ex. E).

After the Charge was formalized, Dennis Maginot became the lead NERC Compliance

Investigator on Mitchell's case.  Maginot conducted a number of investigatory interviews related

to Mitchell's case. (Maginot Dep. 18:18–21, ECF No. 92 Ex. 9).  Maginot generally recorded

these interviews to be placed in the complaining party's case file, but on the day he interviewed

Stoltz and others, neither his microcassette recorder nor his digital recorder functioned properly,

which left Maginot without any recordings of those meetings other than a forty-second clip of

introductory remarks. (*Id.* at 18:1–21:2).

The NERC transferred Mitchell's case to the United States Equal Employment

Opportunity Commission ("EEOC") around August 31, 2011.  The case was assigned to Miguel

Escobar and he also conducted an interview with Mitchell. (Follow-Up Interview Notes, ECF

No. 92 Ex. 10).  In conjunction with his own interview notes, Escobar relied on information

contained in the NERC case file when he recommended that the EEOC file a lawsuit against

1    Wedco based on Mitchell's discrimination claim. (Escobar Dep. 45:14–17, ECF No. 92 Ex. 11).

2    On September 27, 2012, the EEOC filed its complaint against Wedco. (ECF No. 1).

3           During the discovery process, Wedco submitted requests for production of all the notes

4    pertaining to Mitchell's allegations that the EEOC had in its possession, including those created

5    by Davis, Maginot, and Escobar. (EEOC's Response to Wedco's First Request for Production of

6    Documents 6, ECF No. 92 Ex. 12).  The EEOC replied that the notes created and kept by the

7    NERC and the EEOC were excluded from discovery by the governmental process privilege.

8    (*Id.*).  The parties submitted this discovery dispute to the magistrate judge who reviewed the

9    EEOC's privilege log and the documents for which it claimed a privilege. (ECF No. 45).  On

10   January 6, 2014, the magistrate judge, after conducting an *in camera* review, ruled that the case

11   notes and other notes in question should not be produced. (ECF No. 57).

12          Notwithstanding this ruling, Wedco here claims that the NERC and the EEOC engaged in

13   spoliation of relevant evidence by either destroying notes that were kept regarding Mitchell's

14   case or by hiding from Wedco portions of notes that would otherwise be discoverable.  Besides

15   the notes, Wedco asserts that the EEOC and Mitchell are responsible for the unavailability of

16   other pieces of evidence.  Wedco seeks to have the EEOC's case dismissed, or alternatively it

17   requests lesser evidentiary sanctions.  The EEOC denies all allegations of spoliation and cross

18   moves for spoliation sanctions against Wedco based on Stoltz throwing away the noose.

19   **II.    LEGAL STANDARDS**

20          Spoliation is "the destruction or significant alteration of evidence, or the failure to

21   preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

22   *LaJocies v. City of N. Las Vegas*, No. 2:08-cv-00606-GMN-GWF, 2011 WL 1630331, at *1 (D.

23   Nev. Apr. 28, 2011) (Navarro, J.) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995,

24

3

1001 (9th Cir. 2002)).  The duty to preserve evidence arises not only when a formal complaint is

filed, but when a party should know that evidence may be relevant to future litigation.  *See In re*

*Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).  If a party fails to

properly preserve evidence, the opposing party may move for sanctions based on the district

court's "inherent discretionary power to make appropriate evidentiary rulings in response to the

destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.

1993).  Before any sanction is appropriate, however, the party alleging spoliation has the burden

to prove by a preponderance of the evidence that the accused party actually destroyed, altered, or

failed to preserve relevant evidence.  *See LaJocies*, 2011 WL 1630331, at *1 (stating that the

applicable standard in the Ninth Circuit "appears to be by a preponderance of the evidence");

*In re Napster,* 462 F. Supp. 2d at 1072.

Once spoliation is proven, the court may sanction the offending party by instructing the

jury to draw an inference adverse to the party or witness responsible for destroying the evidence,

excluding witness testimony proffered by the responsible party and based on the destroyed

evidence, or dismissing the claim of the responsible party. *In re Napster*, 462 F. Supp. 2d at

1066.  "Generally, the court should choose the least onerous sanction corresponding to the

willfulness of the destructive act and the prejudice suffered by the victim." *LaJocies*, 2011 WL

1630331, at *1.  Moreover, a court must find that the party accused of spoliation acted with

"willfulness, fault, or bad faith" before dismissal is an appropriate sanction. *Leon v. IDX Sys.*

*Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  "[A] finding of bad faith is not a prerequisite" for

lesser sanctions, however. *Glover*, 6 F.3d at 1329.  A court also has the option of considering

whether the wronged party was prejudiced by the alleged spoliation before it imposes sanctions.

*See In re Napster*, 462 F. Supp. 2d at 1075 n.4 (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376,

382 (9th Cir. 1988)) (stating that under the court's inherent authority to impose sanctions, "prejudice is an 'optional' consideration" as compared to sanctions under Rule 27 of the Federal Rules of Civil Procedure where prejudice is essential). A prejudice inquiry determines whether the spoliating party's actions impaired the other party's "ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation omitted).

## III.   DISCUSSION

### A.  Wedco's Motion for Spoliation Sanctions

Wedco cites three reasons supporting spoliation sanctions against the EEOC. Its first reason is that the EEOC failed to preserve notes and other information gathered during the investigation of Mitchell's discrimination claim. Second, Wedco argues that the EEOC's failure to preserve a camera used by Mitchell to photograph the noose and the negatives of those photographs amounts to spoliation. The final contention is that the EEOC's inability to produce a calendar Mitchell used to track days he did not receive breaks also proves spoliation.

#### 1.  NERC and EEOC Investigatory Notes

Wedco's assertion of spoliation as to the EEOC's investigatory notes focuses on notes taken by Davis, Maginot, and Escobar. As an initial matter, the Court advises the parties that it does not recognize the EEOC's asserted governmental process privilege as it pertains to the investigatory notes. "This privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and polices are formulated." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The privilege is meant to allow open and frank discussion among those responsible for making governmental decisions without worrying that such communications will be subject to discovery

5

1    requests. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001).

2    Davis's handwritten notes were clearly not intended to facilitate discussion and deliberation

3    within the NERC or the EEOC since the notes were intended to only help Davis complete

4    Mitchell's Charge and since they were shredded immediately thereafter.  Accordingly, the

5    process privilege would not apply, and Davis's notes would have been discoverable by Wedco.

6           The process privilege is also inapplicable to notes taken by either Maginot or Escobar.

7    Notes taken during an interview, without more, are not advisory opinions, recommendations, or

8    deliberations.  They instead reflect only the information that was transmitted from interviewee to

9    interviewer.  If either Maginot or Escobar took notes during interviews with Mitchell, Wedco is

10   entitled through discovery to know the contents of those discussions.  However, if Maginot or

11   Escobar drafted any sort of opinion after meeting with Mitchell that was then sent to the EEOC

12   attorneys with recommendations regarding Mitchell's claim, that document would likely qualify

13   for the process privilege. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th

14   Cir. 1988) (stating that the privilege could allow the government to withhold memoranda

15   containing advice and subjective analysis).

16          The Court further notes that it will not find any privilege to cover statements made by

17   Mitchell to Davis, Maginot, or Escobar.  There is no attorney-client privilege that the EEOC can

18   assert as to these individuals because they are not attorneys or legal staff working at the direction

19   of EEOC attorneys.  Rather, they are the government employees who conducted interviews as

20   part of the administrative investigation to determine whether "there was reasonable cause to

21   believe a claim existed" against Wedco. *See EEOC v. Int'l Profit Assocs., Inc.*, 206 F.R.D. 215,

22   220 (N.D. Ill. 2002) (stating that no attorney-client privilege could be asserted in regards to

23   interview notes taken by EEOC enforcement employees prior to the filing of the lawsuit).  It

24

6

would therefore be inappropriate to extend any sort of privilege to communications between nonattorney administrative employees and Mitchell that occurred before any lawsuit was filed. With that in mind, the Court first considers Wedco's allegations relating to Maginot's and Escobar's investigatory notes.

### a.       Maginot and Escobar's notes

Wedco offers no concrete evidence that the EEOC spoliated any of Maginot's or Escobar's notes.  Wedco argues that despite Maginot's admission that he communicated with Mitchell numerous times, the EEOC failed to produce any documentation of those conversations. (Def.'s Mot. Spoliation Sanctions 7, ECF No. 92).  Wedco further asserts that Maginot's digital recorder was functioning properly on the day he conducted interviews on-site at Wedco and it was for this reason Maginot left the recorder on the table, despite Maginot's deposition testimony that the recorder wasn't working. (*Id.* at 8).  Wedco's argument is apparently that Maginot's plan was to keep the recorded interviews for himself by feigning ignorance of why the recorder was not functioning that day.  A party moving for spoliation sanctions is not entitled to have the Court agree with broad inferences of spoliation based on nothing more than speculation. Even the low-threshold preponderance of the evidence standard still requires sufficient objective evidence to allow the fact-finder to conclude that the existence of a fact is more probable than its nonexistence. *See Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 770 (9th Cir. 2001) (citing *Concrete Pip and Prods. Of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).  The facts Wedco asserts regarding Maginot's notes and recordings do not lead the Court to believe that it is more probable than not that the EEOC spoliated either.

Wedco's evidence that the EEOC spoliated notes created by Escobar is even more speculative.  The copy of Escobar's notes that the EEOC produced to Wedco is titled "Follow-

Up Interview with CP Larry Mitchell." (Follow-Up Interview Notes 1).  Wedco took this title to

mean that Escobar must have conducted previous interviews with Mitchell since this interview

was called the "Follow-Up." (Def.'s Mot. Spoliation Sanctions 9).  However, Escobar stated in

his deposition that he reviewed the NERC's case notes when he received Mitchell's file.

(Escobar Dep. 45:14–17).  Escobar would then logically conduct an interview with Mitchell to

follow up on the case notes contained in Mitchell's case file.  Since Wedco does not provide any

other proof that Escobar created additional notes or that the EEOC destroyed or is hiding

additional notes, there is no basis to find spoliation.

### b.    Davis's notes

Wedco's proof of spoliation increases significantly in relation to Davis's notes.  Wedco

points out that Davis admitted that he would shred his notes after drafting a complaining party's

charge and that he followed this practice when preparing Mitchell's Charge. (Def.'s Mot.

Spoliation Sanctions 6–7).  Even though Davis transposed portions of his notes into Mitchell's

Charge, Davis concedes that not all of his notes actually made it into the final draft. (Davis Dep.

33:1–6).  Those excess notes were also shredded.  Wedco is right to wonder whether the

statements in those shredded notes contradict any portion of Mitchell's current claim of

discrimination. (Def.'s Mot. Spoliation Sanctions 6).  Davis's actions, however, do not rise to the

level of bad faith required to warrant dismissal of the EEOC's case.  The evidence provided

shows that Davis shredded his handwritten notes because they were "cryptic" and "decipherable"

only by him. (Davis Dep. 55:18–56:5)  The facts do not support a conclusion that Davis

specifically sought to destroy evidence so that Wedco's defense would be inhibited. *Cf. Leon*,

464 F.3d at 959 (finding sufficient bad faith for dismissal where plaintiff intentionally deleted

computer files and then ran a program to write over deleted documents).   Absent a strong

1    showing of bad faith on Davis's part, the Court does not find dismissal to be appropriate based

2    on his actions.

3            The Court also does not find an adverse inference jury instruction to be appropriate.  An

4    adverse inference jury instruction is warranted if "(1) the party having control over the evidence

5    had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with

6    a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or

7    defense such that a reasonable trier of fact could find that it would support that claim or

8    defense." *In re Napster*, 462 F. Supp. 2d at 1078 (citation omitted).  The duty to preserve

9    evidence arises as soon as the party knows or reasonably should know that the evidence is

10   relevant to a potential action. *Id.* at 1067.  As a NERC officer, Davis should have realized that

11   Mitchell's statements to him and Davis's own notes of those statements would be relevant to

12   potential litigation.  Davis's purpose in interviewing Mitchell was to determine whether Mitchell

13   had a legitimate claim of discrimination against Wedco.  It follows that anything written down

14   during that interview could be relevant to a lawsuit eventually filed by Mitchell or the EEOC.

15   Davis therefore had an obligation to preserve his notes rather than shredding them even if he

16   believed that the important information was transposed onto the official charge form.

17           Despite Davis's failure to comply with the duty to preserve relevant evidence, the facts

18   do not indicate that Davis acted with a culpable state of mind.  When relevant evidence is made

19   unavailable for an innocent reason, "an adverse evidentiary inference from the loss may be

20   rejected." *Med. Lab. Mgmt. Consultants v. Am. Broad. Co.*, 306 F.3d 806, 824 (9th Cir. 2002).

21   As stated, Davis explained that he shredded his handwritten notes because he copied what he

22   believed was relevant onto Mitchell's final Charge. (Davis Dep. 32:17–33:6).  Davis felt that his

23   handwritten notes did not possess intrinsic value because he viewed them as simply a draft of the

24

1   Charge. (*Id.* at 55:18–56:13). While the Court finds Davis's practice questionable, it cannot

2   conclude that he acted intentionally or with bad faith to frustrate Wedco's defense. *See Med.*

3   *Lab. Mgmt. Consultants*, 306 F.3d at 825. Therefore, the Court does not grant Wedco's request

4   for an adverse inference jury instruction.

5          Alternatively, Wedco asks the Court to issue an exclusion sanction against the EEOC

6   precluding it from presenting a number of arguments related to statements made by Mitchell

7   prior to his interviews with the NERC. (Def.'s Mot. Spoliation Sanctions 24–25). Whether

8   preclusion sanctions are appropriate depends on the extent to which the nonspoliating party was

9   prejudiced by the spoliating party's destruction of evidence. *See Unigard Sec. Ins. Co. v.*

10  *Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). In this case, the extent of

11  prejudice suffered by Wedco is not readily determinable based solely on parties' memoranda.

12  Since Davis shredded his notes, there is no way to review what was written and determine

13  whether Mitchell's admissions to Davis contradicted the statements appearing in the official

14  Charge that was sent to Wedco. Despite Davis's actions, Wedco is not entitled to an inference

15  that the shredded notes did in fact contain contradictions. Rather, the Court in its discretion

16  believes that the most effective method for ascertaining the truth regarding Mitchell's statements

17  to the NERC would be to allow both parties the opportunity to call witnesses at trial. *See Glover*,

18  6 F.3d at 1329 (recognizing that it is within the trial court's inherent discretionary power to make

19  rulings in response to the spoliation of evidence). An examination under oath of Mitchell as well

20  as those who interviewed him should be sufficient for both parties to effectively present their

21  theories as to whether Mitchell's early claims of discrimination evolved after his initial contact

22  with the NERC and the EEOC.

23

24

1    Therefore, the Court denies Wedco's motion because it does not find sufficient bad faith

2    or culpability to warrant spoliation sanctions.  The Court does find, however, that Wedco should

3    have the opportunity at trial to inquire into the statements and admissions Mitchell made to the

4    NERC and EEOC officers during the agencies' administrative investigations.  This allowance

5    remedies the prejudice Wedco suffered due to Davis's note shredding.

6              **2.  Mitchell's Camera, Negatives, and Calendar**

7    The second and third pieces of evidence that Wedco believes were spoliated are the

8    camera Mitchell used to take pictures of the noose, along with the negatives of those pictures,

9    and the calendar that Mitchell used to track the days he was allegedly denied breaks.  The EEOC

10   acknowledges that the originals of these pieces of evidence are unavailable. (Pl.'s Opp'n to

11   Def.'s Mot. Spoliation Sanctions 17–18, ECF No. 94).  However, it explains that the camera at

12   issue was of the "disposable" variety, which means that the party developing the pictures

13   disposes of the camera after removing the roll of film. (*Id.*).  It thus makes sense that the original

14   camera would not be available.  Despite not having the negatives of the pictures, Wedco was

15   given an authenticated copy of the relevant photographs. (Copies of Mitchell's Photographs,

16   ECF No. 94 Ex. P).  Since Wedco's position is that the photographs were staged rather than

17   "doctored," the photographs themselves have as much evidentiary value as the negatives.  The

18   Court thus determines that there has been no prejudice here.

19   Similarly, the EEOC admits that Mitchell's original calendar is no longer available. (Pl.'s

20   Opp'n to Def.'s Mot. Spoliation Sanctions 18).  While neither side offers an explanation for the

21   original calendar's unavailability, authenticated photocopies of the calendar are available. (*Id.*).

22   Since a photocopy of the calendar gives Wedco the same information as the original copy would

23   have provided, there does not appear to be any prejudice in this instance either.  Accordingly, the

24

1    Court does not find spoliation sanctions appropriate as to either the camera or the calendar

2    because of the lack of prejudice to Wedco.

3         The Court also denies Wedco's request for attorney's fees. "Under its 'inherent powers,'

4    a district court may also award sanctions in the form of attorneys' fees against a party or counsel

5    who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Leon*, 464 F.3d at 961

6    (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). Before a

7    court may award attorney's fees, it "must make an express finding that the sanctioned party's

8    behavior constituted or was tantamount to bad faith." *Id.* (quoting *Primus Auto.*, 115 F.3d at 648)

9    (internal quotations omitted). Bad faith is demonstrated when a party delays or disrupts the

10   litigation or hampers the enforcement of a court order. *Primus Auto.*, 115 F.3d at 649. The Court

11   does not find that the EEOC acted in bad faith or that it unnecessarily delayed litigation. The

12   EEOC's assertions that it had produced all nonprivileged documents responsive to Wedco's

13   discovery requests is compatible with the magistrate judge's previous ruling that the process

14   privilege protected the notes. The Court thus declines to award attorney's fees.

15        Therefore, Wedco's motion is DENIED.

16   **B. EEOC's Motion for Spoliation Sanction**

17        The EEOC argues that Wedco should be subject to sanctions for destroying the noose that

18   hung in Wedco's warehouse before and during Mitchell's employment. Stoltz indeed stated that

19   once he received Mitchell's Charge from the NERC he took the noose and threw it in the trash.

20   (Stoltz Dep. 92:8–21). Beyond this admission, however, the EEOC does not provide any

21   evidence that Stoltz was motivated by bad faith rather than by a desire to administratively

22   resolve the problem of the noose. Since there is no evidence of bad faith, the Court does not

23   agree with the EEOC's request for a default sanction. Lesser spoliation sanctions do not require

24

12

1    a showing of bad faith, *In re Napster*, 462 F. Supp. 2d at 1066, but the decision of whether to

2    impose a sanction at all is squarely within the court's broad discretion. *Unigard*, 982 F.2d at 368.

3        The EEOC's Complaint alleges that Mitchell "was exposed to a noose hanging in the

4    receiving area that was visible from his workspace" and that "[r]acial comments were made on

5    more than one occasion about the noose." (Compl. 5, ECF No. 1).  The Complaint also alleges

6    that members of Wedco's upper management "were aware of the noose and its discriminatory

7    connotation and took no action to remove it." (*Id.* at 6).  In its Answer, Wedco denies all of these

8    allegations. (Answer 3–4, ECF No. 21).  It is undisputed, however, that Mitchell took pictures of

9    the noose hanging in the warehouse and that those photographs are available to both parties.  The

10   evidence available to the EEOC supportive of its contention that a noose was displayed in

11   Wedco's warehouse during Mitchell's employment appears sufficient to overcome any prejudice

12   the EEOC might have suffered because Stoltz threw out the noose.  The Court finds that the lack

13   of prejudice supports the denial of the EEOC's motion for lesser sanctions.

14       The Court also denies the EEOC's request for attorney's fees. As stated, such a sanction

15   is appropriate only when the court makes an explicit finding of bad faith. *Leon*, 464 F.3d at 961

16   (quoting *Primus Auto.*, 115 F.3d at 648 (9th Cir. 1997)).  It is true that Wedco's arguments

17   contained a number of large inferential leaps with which the Court did not agree.  Nevertheless,

18   the evidence of Davis's shredding of interview notes alone demonstrates that this motion was not

19   brought in bad faith.

20       Therefore, the EEOC's motion is DENIED.

21   ///

22   ///

23   ///

24

13

1

**CONCLUSION**

2          IT IS HEREBY ORDERED that Wedco's Motion to Seal (ECF No. 91) is GRANTED.

3   IT IS ORDERED that Wedco's Motion for Spoliation Sanctions (ECF No. 92) is DENIED.  IT

4   IS FURTHER ORDERED that the EEOC's Cross Motion for Spoliation Sanctions (ECF No. 94)

5   is DENIED.

6

7          IT IS SO ORDERED.

8

9   Dated:  September 15, 2014

10

11                                                   _____
                                                          ROBERT C. JONES
12                                                   United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24